UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| BARBARA McGOWEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:12-cv-00109-JAW |
| | ) | |
| FOUR DIRECTIONS | ) | |
| DEVELOPMENT CORPORATION, | ) | |
| et al., | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER GRANTING IN PART AND DISMISSING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Barbara McGowen alleges that her former employer, Four Directions Development Corporation (FDDC), and her former supervisor, Susan Hammond, committed one federal and a variety of state civil wrongs related to Ms. McGowen's employment and termination from FDDC. She alleges violations of the Federal Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* (FLSA); the state of Maine's wage and hour law, ME. REV. STAT. tit. 26, §§ 664 *et seq.*; the Maine Whistleblower Protection Act, ME. REV. STAT. tit. 26, §§ 831 *et seq.* (MWPA); and the Maine common law of defamation and tortious interference with a business relationship. Before the Court is the Defendants' motion for summary judgment as to Counts I, III, and V of the Amended Complaint and for partial summary judgment as to Counts II and IV. The summary judgment record shows no genuine dispute of material fact as to Count I, the FLSA claim; Ms. McGowen met both the "salary basis test" and the

"duties test" for classification as an employee exempt from the FLSA's overtime pay requirements. The Court grants summary judgment as to Count I and dismisses the remaining state law claims without prejudice to allow Ms. McGowen to proceed, if she wishes, with the state claims in state court.

## I.  LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "'A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party.'" *Rodriguez-Rivera v. Federico Trilla Reg'l Hosp.*, 532 F.3d 28, 30 (1st Cir. 2008) (quoting *Thompson v. Coca-Cola Co.*, 522 F.3d 168, 175 (1st Cir. 2008)). "A fact is material if it has the potential of determining the outcome of the litigation." *Maymí v. P.R. Ports Auth.*, 515 F.3d 20, 25 (1st Cir. 2005).

The party moving for summary judgment must demonstrate an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). In determining whether this burden is met, the Court must view the record in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences in its favor. *Santoni v. Potter*, 369 F.3d 594, 598 (1st Cir. 2004). Once the moving party has made a preliminary showing that no genuine issue of material fact exists, the nonmovant must "'produce specific facts, in suitable evidentiary form, to . . . establish the presence of a trialworthy issue.'" *Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 1999) (quoting

*Morris v. Gov't Dev. Bank of P.R.*, 27 F.3d 746, 748 (1st Cir. 1994)). "'[A]s to any essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trialworthy issue warrants summary judgment to the moving party.'" *In re Spiegel*, 260 F.3d 27, 31 (1st Cir. 2001) (quoting *Century 21 Balfour Real Estate v. Menna*, 16 F.3d 7, 9 (1st Cir. 1994)).

## II.  FACTS

### A.  Procedural Posture

Ms. McGowen filed her first Complaint on May 2, 2012, *Compl.* (ECF No. 1), and an Amended Complaint on June 6, 2013. *Am. Compl.* (ECF No. 42). Count I alleges a violation of the FLSA, *id.* at 11; Count II alleges a violation of Maine's minimum wage and hour law, *id.* at 12; Count III a violation of the MWPA, *id.* at 12; Count IV common law defamation, *id.* at 13; and Count V "tortious interference" with a contract or business relationship. *Id.* at 14. The Defendants answered on July 19, 2013. *Answer.* (ECF No. 47).

On August 9, 2013, the Defendants moved for summary judgment on Counts I, III, and V, and partial summary judgment on Counts II and IV. *Mot. for Summ. J.* (ECF No. 51) (*Def.'s Mot.*). As to Count II, the Defendants ask for summary judgment for the period from June, 2008 to April, 2011. *Def.'s Mot.* 16. As to Count IV, they ask for summary judgment regarding seven specific, allegedly defamatory statements. *Id.* at 20. The Defendants accompanied their motion with a statement of material facts, *Def.'s Rule 56(g) Statement of Material Facts* (ECF No. 52) (DSMF), and a number of exhibits.

Ms. McGowen responded in opposition to the motion on September 13, 2013. *Pl.'s Opp'n to the Def.'s Mot. for Summ. J.* (ECF No. 57) (*Pl.'s Opp'n*). With the opposition came a reply to the Defendants' statement of material facts and a statement of additional material facts. *Pl.'s Opposing and Additional Statement of Material Facts in Opp'n to Summ. J.* (ECF No. 58) (PRDSMF) (PSAMF). The Defendants replied to Ms. McGowen's opposition on September 27, 2013, *Def.'s Reply Mem. of Law* (ECF No. 61) (*Def.'s Reply*). They also filed an opposition to Ms. McGowen's requests to strike, under District of Maine Local rule 56(e), and a reply to Ms. McGowen's Statement of Additional Material Facts. *Def.'s Resp. to Pl.'s Objections and Reply Statement of Material Facts* (ECF No. 62) (*Rule 56(e) Resp.*) (DRPSAMF).

On September 26, 2013, Ms. McGowen moved to supplement the record. *Pl.'s Mot. for Leave to File Supplemental R. in Opp'n to Summ. J.* (ECF No. 60). On October 17, 2013, FDDC filed a response to the motion for leave to file supplemental record. *Resp. of Defs. To Mot. of Pl. for Leave to File Supplemental R.* (ECF No. 65). On November 8, 2013, the Court also granted Ms. McGowen leave to supplement the summary judgment record, *Order Granting Mot. for Leave to File Supplemental Record* (ECF No. 66), and Ms. McGowen submitted supplemental materials on November 12, 2013. *Pl.'s Supplemental R. in Opp'n to Def.'s Mot. for Summ. J.* (ECF No. 67) (*Supplemental R.*). However, on December 14, 2013, FDDC filed a supplemental citation, consisting of a citation to *Winslow v. Aroostook County*, 736 F.3d 23 (1st Cir. 2013), a case the First Circuit decided on November 15, 2013.

*Supplemental Citation by Defs. on Mot. for Summ. J.* (ECF No. 69).  On January 6,

2014, Ms. McGowen filed a response to FDDC's supplemental citation filing.[1]  *Pl.'s*

*Resp. in Opp'n to Defs.' Supplemental Citation on Summ. J.* (ECF No. 70).

### B.    Summary Judgment Facts[2]

#### 1.    The Defendants' Facts

##### a.    Background Facts

Four Directions Development Corporation ("FDDC") is a Maine nonprofit

corporation with an office in Orono, Maine.  DSMF ¶ 1; PRDSMF ¶ 1.[3]  FDDC was

formed under sponsorship by the Penobscot Indian Nation, with support from other

Maine tribes, the Passamaquoddy Tribe, the Houlton Band of Maliseet Indians, and

the Aroostook Band of Micmacs, to provide affordable housing and economic

development services to the tribes and to tribal members.  DSMF ¶ 2; PRDSMF ¶ 2.

FDDC is a community development corporation and a Community Development

Financial Institution.  DSMF ¶ 3; PRDSMF ¶ 3.  In the period of 2006 to 2011, it

had a housing program, a business program, and other activities.  DSMF ¶ 3;

---

[1]      This response was docketed as an objection to FDDC's additional attachments, namely a copy of the *Winslow* case.  *See Objection to Additional Attachs.* (ECF No. 70).  The Court does not view Ms. McGowen's response as an objection to the fact of the supplemental filing, only as a response to the argument contained in the supplemental filing, the merits of which are subsumed by the pending motion.  In any event, to keep the docket straight, the Court OVERRULES the Plaintiff's Objection to Additional Attachments, Supplemental Citation (ECF No. 70).

[2]      Keeping with "the conventional summary judgment praxis," the Court recounts the facts in the light most hospitable to Ms. McGowen's case theories, consistent with record support.  *Gillen v. Fallon Ambulance Serv., Inc.*, 283 F.3d 11, 17 (1st Cir. 2002).  In compliance with this obligation, the Court recites supported facts as true even if the Defendants dispute them.

[3]      The Defendants' paragraph 1 characterizes FDDC as a "small Maine nonprofit corporation."  DSMF ¶ 1.  Ms. McGowen interposes a qualified response, conceding that "FDDC has a relatively small number of employees, but it handled over a million dollars in Federal grants in each of the fiscal years 2010, 2011, and 2012."  PRDSMF ¶ 1.  Referring to FDDC as "small" is a characterization, not a fact.  The Court omits the word "small," and deems paragraph 1, as modified, admitted under Local Rule 56(f), (g).

PRDSMF ¶ 3. It engaged in lending for housing and business development purposes to tribal members and member-owned businesses. DSMF ¶ 3; PRDSMF ¶ 3.

Susan Hammond, a member of the Penobscot Indian Nation, has served as Executive Director of FDDC from 2001 to present. DSMF ¶ 4; PRDSMF ¶ 4. FDDC receives funding from a variety of grant sources, public and private. DSMF ¶ 5; PRDSMF ¶ 5. FDDC had twelve employees in fiscal year 2010 and thirteen in fiscal year 2011. DSMF ¶ 6; PRDSMF ¶ 6.[4]

Rachel Grivois, C.P.A., is an outside accountant who serves as Chief Financial Officer for FDDC. DSMF ¶ 7; PRDSMF ¶ 7. FDDC uses several outside grant consultants, including Helen Scalia, James Hanna, and Chris Shrum. DSMF ¶ 8; PRDSMF ¶ 8. FDDC uses an outside personnel consultant, Peter Chavonelle, for personnel and human resource matters. DSMF ¶ 9; PRDSMF ¶ 9.[5]

---

[4] The Defendants claim that "FDDC had between 5 and 7 employees in 2010 and 2011. DSMF ¶ 6 (citing DSMF Attach. 1 *Second Decl. of Susan Hammond* (ECF No. 52) (Aug. 9, 2013) (*Hammond Second Decl.*) Ms. McGowen denies this assertion. PRDSMF ¶ 6 (citing PRDSMF Attach. 1 *Return of Organization Exempt From Income Tax*, at 1 (ECF No. 58) (May 12, 2011) and PRDSMF Attach. 2 *Return of Organization Exempt From Income Tax*, at 1 (ECF No. 58) (Mar. 5, 2012)). Ms. McGowen attached copies of Four Directions' annual IRS Form 990 for its fiscal years from October 1, 2009 through September 30, 2010 and from October 1, 2010 through September 30, 2011, which confirms it had twelve and thirteen employees for each respective year. *Id.* As record material directly controverts the Defendants' assertion of paragraph 6, and as the Court is bound to resolve factual disputes in Ms. McGowen's favor, the Court modified the assertion to reflect Ms. McGowen's record material, and deems paragraph 6, as amended, admitted under Local Rule 56(f), (g).

[5] Ms. McGowen interposes a qualified response, denying that Peter Chavonelle "was available to employees of FDDC as a resource on 'personnel matters.'" PRDSMF ¶ 9. The Defendants' paragraph 9 does not make the assertion that Ms. McGowen purports to deny; the Defendants only claim that Mr. Chavonelle was used by FDDC "for personnel and human resources matters." DSMF ¶ 9. Because Ms. McGowen has not shown that the assertion of paragraph 9 is inaccurate or misleading, or that she is unable to reply to the assertion, the Court deems Defendants' paragraph 9 admitted under Local Rule 56(f), (g).

## b. Ms. McGowen's Status as an Employee

FDDC employed Ms. McGowen from November 2006 to April 11, 2011. DSMF ¶ 10; DRPSMF ¶ 10. From November 2006 until at least June 2008, Ms. McGowen held a position as an Administrative Assistant. DSMF ¶ 11; PRDSMF ¶ 11.[6] From April 2007—when the former Business Program Coordinator, Patricia Kontur, left FDDC—to June 2008, Ms. McGowen became increasingly involved in the Business Program. DSMF ¶ 12; PRDSMF ¶ 12. Among the duties Ms. McGowen assumed were working with outside consultants to complete a commercial loan. DSMF ¶ 13; PRDSMF ¶ 13. This included meeting with the client, collecting the information needed to compile a loan file, and reviewing the documents prepared for the loan committee. DSMF ¶ 13; PRDSMF ¶13.[7] Ms.

---

[6]    In paragraph 11, the Defendants claim that "[f]rom November, 2006 to June, 2008, Ms. McGowen held a position as an Administrative Assistant." DSMF ¶ 11 (citing DSMF Attach. 3 *Decl. of Susan Hammond*, ¶¶ 4-5 (ECF No. 52) (Nov. 28, 2011) (*Hammond Decl.*)). Ms. McGowen denies this assertion. PRDSMF ¶ 11 (citing PRDSMF Attach. 4 *Aff. of Barbara McGowen*, ¶ 5 (ECF No. 58) (Sept. 11, 2013) (*McGowen Aff.*); PRDSMF Attach. 6 *Performance Review Summary*, at 1 (ECF No. 58) (undated); and *Supplemental R.* Attach. 2 *Dep. of Susan Hammond*, at 52:9-16 (Jan. 7, 2013) (*Hammond Dep.*)). Ms. McGowen's affidavit claims that "[f]rom April of 2007 forward, I performed some duties of the Business Program Coordinator position while also continuing to give administrative assistance to Susan Hammond." *McGowen Aff* ¶ 5. The word "forward" in this sentence is vague, and Ms. Hammond's deposition and the performance review do not conclusively show when, if at all, Ms. McGowen ceased to perform these duties. The performance review does establish that she may have been acting in part as an administrative assistant through December of 2008. The Court concludes that the record does not fully controvert the Defendants' paragraph 11, but the Court modifies paragraph 11 to reflect that Ms. McGowen performed the duties of the administrative assistant until "at least" June 2008. The Court deems Ms. McGowen's denied response to Defendants' paragraph 11, as amended, admitted under Local Rule 56(f), (g).

[7]    Ms. McGowen interposes a qualified response to paragraph 13, denying all of the statement except that "as a general matter, [Ms.] McGowen worked on commercial loans, met with clients, and compiled information." PRDSMF ¶ 13 (citing *McGowen Aff*. ¶¶ 32-33). The record material cited by the Defendants does not support their assertion that Ms. McGowen worked with "a co-worker" on the loan. DSMF ¶ 13. She did not refer to her colleague as a co-worker, DSMF Attach. 8 *Dep. of Barbara McGowen*, at 9:12-22 (ECF No. 52) (Jan. 2, 2013) (*McGowen Dep.*), and her affidavit identifies the colleague as an "outside consultant." *McGowen Aff.* ¶ 33. However, Ms. McGowen testified at her deposition that she "worked with Jay Fortier with an active commercial loan that was in process" and that "[w]e met with the client, we collected the information needed to compile a loan

7

McGowen also worked with tribal communities to organize necessary training in order to qualify for grants. DSMF ¶ 14; PRDSMF ¶ 14.[8]

In June 2008 Ms. Hammond promoted Ms. McGowen to Business Program Coordinator. DSMF ¶ 15; PRDSMF ¶ 15.[9] Although Ms. McGowen performed some unlisted tasks as assigned, the FDDC job description for the Business Program Coordinator is an accurate summary of the job duties Ms. McGowen regularly performed while she held that position. DSMF ¶ 16; PRDSMF ¶ 16.[10] Those duties

---

file, [and] prepared the . . . documents for the loan committee. Jay prepared the documents and I reviewed them." *McGowen Dep.* at 9:12-22. This supports the assertion of paragraph 11, other than the statement about a "co-worker," and paragraphs 32 and 33 of Ms. McGowen's affidavit do not controvert it. Furthermore, an interested witness may not offer an affidavit that directly contradicts his or her own deposition testimony without a satisfactory explanation for the conflict. *Colantuoni v. Alfred Calcagni & Sons, Inc.*, 44 F.3d 1, 4-5 (1st Cir. 1994). The Court deems the Defendants' paragraph 13, as modified, admitted under Local Rule 56(f), (g).

[8]    The Defendants assert that "Ms. McGowen also worked with tribal communities to perform necessary training in order to qualify for grants." DSMF ¶ 14 (citing *McGowen Dep.* at 9:23-25, 10:1-17). Ms. McGowen denies this assertion. PRDSMF ¶ 14 (citing *McGowen Aff.* ¶ 34). In her deposition, Ms. McGowen stated that "Sue [Hammond] and I worked together on some training activities . . . that had to happen . . . within the communities in order to fulfill grant obligations." *McGowen Dep.* at 10:1-2, 10:12-14. Her Affidavit denies that she "performed" any training, and claims instead that she assisted Ms. Hammond in various organizational tasks related to training. Viewing these statements in a light most favorable to Ms. McGowen, the Court modifies paragraph 14 to reflect that Ms. McGowen organized training, but did not perform it. The Court deems Defendants' paragraph 14, as modified, admitted under Local Rule 56(f), (g).

[9]    Ms. McGowen interposes a qualified response, but the qualification does not change the substance of paragraph 15. The Court deems Defendants' paragraph 15 admitted under Local Rule 56(f), (g).

[10]    Ms. McGowen denies this assertion, stating that it is incomplete and therefore inaccurate. PRDSMF ¶ 16 (citing *McGowen Aff.* ¶ 35 and *McGowen Dep.* at 22:22-23:11). However, in her deposition, Ms. McGowen reveals the following exchange:

> Q    . . . In a nutshell this [job description] is an accurate summary of the duties of the job?
> A    Yes.
> Q    And in addition there were other duties that aren't listed here?
> A    Other duties as assigned, yes.
> Q    . . . And what did it turn out those other duties were, if you remember?
> A    It's almost impossible to . . . recall.

*McGowen Dep.* at 23:3-11. The Court amended Defendants' paragraph 16 to reflect that it is an accurate statement of her regular job duties but does not list occasionally assigned tasks. As

consisted primarily of office and non-manual work. DSMF ¶ 17; PRDSMF ¶ 17. Ms. McGowen exercised a fair amount of judgment and discretion in her position of Business Program Coordinator. DSMF ¶ 18; PRDSMF ¶ 18.[11] Ms. McGowen was responsible for significant matters in this position, such as preparing loans and preparing information on loans for FDDC's Loan Committee. DSMF ¶ 19; PRDSMF ¶ 19.[12] Ms. McGowen's duties also included working one-on-one with FDDC clients and assisting them in utilizing the various services provided by FDDC. DSMF ¶ 20; PRDSMF ¶ 20.[13]

---

modified, the Court refuses to accept Ms. McGowen's denial and deems Defendants' modified paragraph 16 admitted under Local Rule 56(f), (g).

[11] Ms. McGowen denies this assertion, citing her Affidavit as evidence of micromanagement by her supervisor, Ms. Hammond. PRDSMF ¶ 18 (citing *McGowen Aff.* ¶¶ 36-38). She also claims that she was required to account for forty hours of work each week. *Id.* (citing *Hammond Dep.* at 101:9-24). She compares her level of "judgment and discretion" to that afforded two other FDDC employees. *Id.* (citing *Hammond Dep.* at 45:3-21 and PSAMF ¶¶ 24-30). However, none of these record citations controverts the basic fact that when asked whether she "had a fair amount of judgment and discretion in your job as business program coordinator," Ms. McGowen answered with an unequivocal "Yes." *McGowen Dep.* at 23:12-15. Ms. McGowen's Affidavit cannot contradict her deposition testimony without satisfactory explanation. *Colantuoni*, 44 F.3d at 4-5. Neither the discretion afforded other employees, nor the amount of time for which Ms. McGowen was required to account each week, calls into serious question her own deposition testimony that she was afforded "a fair amount of judgment and discretion" in her job as Business Program Coordinator. The Court modified Defendants' paragraph 18 to more accurately reflect her testimony that she had "a fair amount" of judgment and discretion. Because Ms. McGowen does not properly controvert the assertion of paragraph 18, the Court deems Defendants' modified paragraph 18 admitted under Local Rule 56(f), (g).

[12] Ms. McGowen denies this assertion, PRDSMF ¶ 19 (citing *McGowen Aff.* ¶ 33), but her deposition testimony supports the assertion virtually word for word. *McGowen Dep.* at 23:16-19. Ms. McGowen's Affidavit cannot directly contradict her deposition testimony without adequate explanation. *Colantuoni*, 44 F.3d at 4-5. The Court deems Defendants' paragraph 19 admitted under Local Rule 56(f), (g).

[13] Ms. McGowen moves to strike paragraph 20 as vague. PRDSMF ¶ 20 (citing D. ME. LOC. R. 56(e)). She views the terms "'working one-on-one' with clients" and "'utilizing various services'" as "incapable of any precise understanding that would enable Plaintiff to respond." *Id.* (quoting DSMF ¶ 20). The Court disagrees. One-on-one means direct communications between two people and although "various services" is vague, it is modified by "provided by FDDC." In the context of this case, the assertion is sufficiently clear to require a response. The Court denies her motion to strike.

Ms. McGowen also denies the statement, *id.* (citing PRDSMF ¶ 18), but nothing in the record material cited in her response to paragraph 18 controverts the assertion of paragraph 20. The Court deems Defendants' paragraph 20 admitted under Local Rule 56(f), (g).

Ms. McGowen was paid weekly for forty hours pay times a stated hourly rate from June 2008 through the end of her employment. DSMF ¶ 22; PRDSMF ¶ 22.[14] Ms. McGowen is not aware of any week in which she received less than 40 hours of pay from June 2008 through the end of her employment. DSMF ¶ 23; PRDSMF ¶ 23. Ms. McGowen received no less than $600.00 per week in gross pay from March 25, 2008 to May 28, 2008. DSMF ¶ 24; PRDSMF ¶ 24. She received $700.00 a week in gross pay from June 4, 2008 to June 25, 2008, regardless of hours she worked. DSMF ¶ 25; PRDSMF ¶ 25.[15] She received $900.00 in gross pay on July 2, 2008. DSMF ¶ 26; PRDSMF ¶ 26. She received $800.00 a week in gross pay from July 9,

---

In paragraph 21, the Defendants assert that "Ms. McGowen assisted Four Directions clients in selecting services from Four Directions that best suited their particular needs." DSMF ¶ 21 (citing *McGowen Dep.* at 25:20-26:24, 28:14-29:7, 29:13-30:21, 31:3-32:21). Ms. McGowen interposes a qualified response; she admits that "she assisted clients as part of her job duties," but denies the remainder. PRDSMF ¶ 21 (citing *McGowen Aff.* ¶ 39). The Court carefully reviewed the Defendants' record citations and concludes that no portion of the cited record supports the assertion; each passage from Ms. McGowen's deposition describes how she participated in writing a grant for a client, but does not suggest that she "assisted Four Direction clients in selecting services from Four Directions that best suited their particular needs." The portion of paragraph 21 that Ms. McGowen admits is redundant with paragraph 20, so the Court disregards paragraph 21 in its entirety.

[14] Ms. McGowen interposes a qualified response to paragraph 22, claiming that she "was instructed to ensure that every single time sheet reflected exactly 40 hours of work each week, using a combination of hours worked, earned time, and comp time, which is not reflected on the wage history." PRDSMF ¶ 22 (citing *Hammond Dep.* at 71:1-19; 99:2-10; 101:2-24). Even if true, Ms. McGowen's response does not change the assertion of paragraph 22. The Court deems Defendants' paragraph 22 admitted under Local Rule 56(f), (g).

[15] Ms. McGowen denies paragraph 25, citing without explanation twenty-five consecutive paragraphs from her own statement of material facts, paragraphs 22 through 47. This violates Local Rules 56(c) and (f). "The opposing statement . . . shall support each denial or qualification by a record citation as required by this rule." D. ME. LOC. R. 56(c). Furthermore,

> [a]n assertion of fact set forth in a statement of material facts shall be followed by a citation to the specific page or paragraph of identified record material supporting the assertion. The court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment. The court shall have no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of facts.

D. ME. LOC. R. 56(f). The Court is under no obligation to sift through each of those paragraphs to discover whether the record citations support her denial of paragraph 25. The Court deems the Defendants' paragraph 25 admitted under Local Rule 56(c), (f), (g).

2008 to May 20, 2009, regardless of the hours she worked. DSMF ¶ 27; PRDSMF ¶ 27.[16] She received $884.80 a week in gross pay from May 27, 2009 to September 30, 2009, regardless of the hours she worked. DSMF ¶ 28; PRDSMF ¶ 28.[17] She received $911.20 a week in gross pay from October 7, 2009 to April 13, 2011, regardless of the hours she worked. DSMF ¶ 29; PRDSMF ¶ 29.[18]

Susan Hammond does not recall that anybody at FDDC ever took unpaid personal leave. DSMF ¶ 30; PRDSMF ¶ 30. If FDDC employees scheduled personal appointments during working hours, they would take the time as paid personal leave, using personal time or earned time. DSMF ¶ 31; PRDSMF ¶ 31.[19] FDDC had no policy of changing the amount of compensation based on the number of hours worked, and it has never been the intent or practice of FDDC to deduct pay from any employee's salary based on the quantity or quality of the work they performed. DSMF ¶ 32; DRPSMF ¶ 32.[20]

---

[16]   The Court deems Defendants' paragraph 27 admitted under Local Rule 56(c), (f), (g). *See supra* note 15.

[17]   The Court deems Defendants' paragraph 28 admitted under Local Rule 56(c), (f), (g). *See supra* note 15.

[18]   The Court deems Defendants' paragraph 29 admitted under Local Rule 56(c), (f), (g). *See supra* note 15.

[19]   The Defendants' version of paragraph 31 states that "[i]f people scheduled personal appointments during working hours, they would take the time as paid personal leave, using personal time or earned time." DSMF ¶ 31 (citing *Hammond Dep.* at 93:5-22). Ms. McGowen moves to strike this paragraph as "vague, ambiguous, and speculative." PRDSMF ¶ 31. However, the context of the cited passage from Ms. Hammond's deposition makes it clear that the statement refers to FDDC employees and is based on her personal knowledge. *Hammond Dep.* at 93:3-9 ("Q. And did you encourage your employees to schedule personal appointments outside of their working hours? A. I didn't make any request. If they scheduled it during working hours, they would take the time. And - - and if they were - - and they would take personal leave"). Ms. McGowen also denies the assertion. PRDSMF ¶ 31 (citing PSAMF ¶¶ 22-47). The Court deems Defendants' paragraph 31 admitted under Local Rule 56(c), (f), (g). *See supra* note 15.

[20]   The Court deems Defendants' paragraph 32 admitted under Local Rule 56(c), (f), (g). *See supra* note 15.

In one instance, a former FDDC employee, Tami Connolly, appeared to have been paid for only 32 hours of work for the November 5, 2005 to November 11, 2005 pay period even though she was regularly paid for 40 hours of work times a fixed hourly rate. DSMF ¶ 33; PRDSMF ¶ 33. There was no deduction from Ms. Connolly's salary, however, because at that time FDDC was changing its pay periods, and she had been overcompensated the previous pay period, October 31, 2005 to November 4, 2005. DSMF ¶ 33; PRDSMF ¶ 33. The amount of the overcompensation equaled eight hours of pay at a fixed hourly rate; the 32 hours of pay was an adjustment in her pay that took into account the overpayment in the prior pay period. DSMF ¶ 33; PRDSMF ¶ 33.

If an employee needed to leave a few hours early one day, he or she would take earned time or paid leave. DSMF ¶ 34; PRDSMF ¶ 34.[21] FDDC never made a deduction to Ms. McGowen's weekly pay for hours she did not work. DSMF ¶ 35; PRDSMF ¶ 35.[22]

2. **Ms. McGowen's Facts**

a. **Whether Ms. McGowen's Affidavits Are Competent Summary Judgment Evidence**

The Court must address a preliminary matter before turning to Ms. McGowen's facts. The Defendants object to a number of her statements of fact on the grounds that the affidavits of Ms. McGowen and expert witness Jack Louis

---

[21]     Ms. McGowen moves to strike this statement as "vague, ambiguous, and speculative." PRDSMF ¶ 34. The Court denies this motion. The Court also deems Defendants' paragraph 34 admitted under Local Rule 56(c), (f), (g). *See supra* note 15.
[22]     The Court deems Defendants' paragraph 35 admitted under Local Rule 56(c), (f), (g). *See supra* note 15.

Smith, Jr. are not competent summary judgment evidence. This is so, in their view, because they are not notarized and do not bear the language required by 28 U.S.C. § 1746. *E.g.*, DRPSAMF ¶ 41 (citing *Massay v. Fed. Corr. Inst.-Texarkana*, 243 Fed. App'x 871, 874 (5th Cir. 2007) (unpublished) and 28 U.S.C. § 1746); DRPSAMF ¶ 46. The Defendants argue that "the affidavit is not notarized, does not indicate that it was made under penalty of perjury or that the statements contained therein are 'true and correct.'" DRPSAMF ¶ 41 (quoting 28 U.S.C. § 1746).

Section 1746 permits an unsworn declaration to substitute for a sworn declaration if it is "subscribed by [the declarant], as true under penalty of perjury, and dated, in substantially the following form: . . . 'I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature).'" 28 U.S.C. § 1746. The jurat of Ms. McGowen's affidavit states only:

> I, Barbara McGowen, being of legal age and competent in all respects to testify, having personal knowledge of the matters set forth herein and having been duly sworn, do hereby state under oath as follows:

*McGowen Aff.* at 1. The jurat of Mr. Smith's Affidavit is identical, with the substitution of his name. PSAMF Attach. 21 *Aff. of Jack Louis Smith, Jr.* (ECF No. 58) (Sept. 3, 2013) (*Smith Aff.*).

Section 1746 requires that the declaration be in "substantially" the form prescribed. Courts considering this statute are in near-universal agreement that an unsworn affidavit must aver that the contents are "true and correct" and do so "under penalty of perjury." *See In re World Trade Center Disaster Site Litig.*, 722 F.3d 483, 488 (2d Cir. 2013) (holding that § 1746 "requires that a certification of the

13

truth of a matter be expressly made under penalty of perjury" and upholding rejection of an affidavit that failed to recite "under penalty of perjury"); *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1305-06 (5th Cir. 1988) (holding that an affidavit could not be considered on summary judgment when it was notarized but did not declare its contents to be "true and correct"); *Powell v. Profile Design LLC*, 838 F. Supp. 2d 535, 540 (S.D. Tex. 2012) (permitting declaration "under penalty of perjury that the foregoing is true and correct"); *United States v. 8 Gilcrease Lane, Quincy, Fla. 32351*, 587 F. Supp. 2d 133, 139 (D.D.C. 2008) (holding that the two necessary elements are "(i) an assertion that the facts are true and correct; and (ii) an averment that the first assertion is made under penalty of perjury"); *Global Health Alternatives, Inc. v. Ellon U.S.A., Inc.*, 1999 WL 33117099, at *1 n.1 (D. Me. Mar. 24, 1999) (unpublished rec. dec.) (holding that affidavits conformed to § 1746 when the declarant "affirm[ed] the truth of the following under the penalty of perjury"); *In re Muscatell*, 106 B.R. 307, 309 (Bankr. M.D. Fla. 1989) (holding that an affidavit could not be considered on summary judgment where the declarant signed under penalty of perjury but did not declare his statements to be true and correct).

The Court does not reach whether a declarant's representation that she is making the statement "under oath" is "substantially" in the same form as the statutorily prescribed jurat. Making a statement "under oath" may be the same as stating that something is true under penalty of perjury. *Compare Pineland Lumber Co. v. Robinson*, 382 A.2d 33, 37 (Me. 1978) (concluding that acknowledging a statement to be the subscriber's "free act and deed" did not "constitute compliance

14

with the verification requirement of [Maine's] materialmen's lien statute"); *with HCI Corp. v. Voikos Constr. Co.*, 581 A.2d 795, 796-99 (Me. 1990) (concluding that a subscribing oath by an attorney stating that the facts were true to the best of his knowledge and belief constituted an oath because it subjected him to possible perjury). At the same time, as the Fifth Circuit noted in *Nissho-Iwai*, omitting the proper jurat "allows the affiant to circumvent the penalties for perjury in signing onto intentional falsehoods." 845 F.2d at 1306.

The Court side-steps whether these jurats substantially conform with 28 U.S.C. § 1746 requirements because it does not matter. First, the Court prefers to rule on the merits. Next, the Court is ruling against the Plaintiff and neither the Plaintiff, whose potentially non-conforming declarations have been considered, nor the Defendants, who prevail, is in a position to object to the Court's decision to accept the declarations, if they are non-conforming.[23]

### b. Ms. McGowen's Work History, Compensation, and Job Duties at FDDC

Prior to becoming employed by FDDC, Ms. McGowen worked at Unicorn Transportation as a secretary, at Maine Head Trauma Center as a secretary, and at the law firm of Pelletier & Faircloth as a paralegal. PSAMF ¶ 1; DRPSAMF ¶ 1. Ms. McGowen worked as a commercial loan officer between 2005 and 2006, during which she was paid on an hourly basis. PSAMF ¶ 2; DRPSAMF ¶ 2.

---

[23] It remains a mystery why Ms. McGowen, once placed on notice that her declarations might be non-conforming, did not file ones that more clearly comply with the prescribed statutory language.

FDDC hired Ms. McGowen into the non-exempt position of administrative assistant at FDDC in November of 2006, at a starting wage of $13.00 per hour. PSAMF ¶ 3; DRPSAMF ¶ 3. Ms. McGowen's hourly wage was increased to $14.00 per hour on July 9, 2007. PSAMF ¶ 4; DRPSAMF ¶ 4. Between July of 2007 and July of 2008, when her position was considered "non-exempt," Ms. McGowen frequently worked in excess of 40 hours per week, but she was not paid overtime. PSAMF ¶ 5; DRPSAMF ¶ 5.[24]

Ms. McGowen continued to work in excess of 40 hours per week after her title officially changed to Business Program Coordinator. PSAMF ¶ 6; DRPSAMF ¶ 6. She kept track of her hours and the "comp time" she used and accrued on her Outlook calendar, which she later converted to an Excel spreadsheet.[25] PSAMF ¶ 6; DRPSAMF ¶ 6. According to data compiled from that spreadsheet, between July and October of 2007 Ms. McGowen accrued and used 12.75 hours of comp time for

---

[24] The Defendants interpose a qualified response, noting that "Ms. McGowen began performing the duties of the Business Program Coordinator position in April, 2007 and was promoted to that position in June, 2008." DRPSAMF ¶ 5 (citing *McGowen Dep.* at 8:24-10:20). This qualification does not render the assertion of paragraph inaccurate or misleading. The Court deems the Plaintiff's paragraph 5 admitted under Local Rule 56(f), (g).

[25] Ms. McGowen uses the term, "comp time", without defining it. Title 5 U.S.C. § 5543(a) states that "on request of an employee," a government agency may "grant the employee compensatory time off from his scheduled tour of duty instead of payment under section 5542 or section 7 of the Fair Labor Standards Act of 1938 for an equal amount of time spent in irregular or occasional overtime work." *See also Doe v. United States*, 513 F.3d 1348, 1351 (Fed. Cir. 2008) (stating that the Social Security Administration "grants one hour of compensatory time for each hour an employee works in excess of 40 hours in a workweek. If an employee has not used his or her compensatory time after eight pay periods, the employee is paid for the compensatory time at a rate equal to one and one-half times the employee's regular rate of pay").

Ms. McGowen uses the term differently. Later, she states that Ms. Hammond implemented a comp time policy at FDDC in which she encouraged all employees to keep track of how many hours they worked over forty in a week and take paid time off to compensate for the extra work. PSAMF ¶ 28. At oral argument, counsel explained that "comp time" has a specific meaning for public but not private employers. The Court has adopted Ms. McGowen's version of comp time for purposes of this opinion.

weeks where her hours exceeded 40, but she was not compensated at time and a half. PSAMF ¶ 7; DRPSAMF ¶ 7. During this same time, Ms. McGowen accrued but was not able to use 27.75 hours of comp time, for which she was never paid. PSAMF ¶ 7; DRPSAMF ¶ 7.

Between October of 2007 and March of 2008, Ms. McGowen accrued and used 25.65 hours of comp time for weeks where her hours exceeded 40, but she was not compensated at time and a half. PSAMF ¶ 8; DRPSAMF ¶ 8. During this same time, Ms. McGowen accrued but was not able to use 13.85 hours of comp time, for which she was never paid. PSAMF ¶ 8; DRPSAMF ¶ 8.

Between March and June of 2008, Ms. McGowen accrued and used 12.9 hours of comp time for weeks where her hours exceeded 40, but she was not compensated at time and a half. PSAMF ¶ 9; DRPSAMF ¶ 9. During this same time, Ms. McGowen accrued but was not able to use 17.95 hours of comp time, for which she was never paid. PSAMF ¶ 9; DRPSAMF ¶ 9.

Between June and July of 2008, Ms. McGowen accrued and used 4.3 hours of comp time for weeks where her hours exceeded 40, but she was not compensated at time and a half. PSAMF ¶ 10; DRPSAMF ¶ 10. During this same time, Ms. McGowen accrued but was not able to use 15.25 hours of comp time, for which she was never paid. PSAMF ¶ 10; DRPSAMF ¶ 10.

Between July of 2008 and May of 2009, Ms. McGowen accrued and used 104.4 hours of comp time for weeks where her hours exceeded 40, but she was not compensated at time and a half. PSAMF ¶ 11; DRPSAMF ¶ 11. During this same

time, Ms. McGowen accrued but was not able to use 162.7 hours of comp time, for which she was never paid.  PSAMF ¶ 11; DRPSAMF ¶ 11.

Between May and October of 2009, Ms. McGowen accrued and used 22.25 hours of comp time for weeks where her hours exceeded 40, but she was not compensated at time and a half.  PSAMF ¶ 12; DRPSAMF ¶ 12.  During this same time, Ms. McGowen accrued but was not able to use 50.5 hours of comp time, for which she was never paid.  PSAMF ¶ 12; DRPSAMF ¶ 12.

Between October of 2009 and June of 2010, Ms. McGowen accrued and used 70.25 hours of comp time for weeks where her hours exceeded 40, but she was not compensated at time and a half.  PSAMF ¶ 13; DRPSAMF ¶ 13.  During this same time, Ms. McGowen accrued but was not able to use 138.5 hours of comp time, for which she was never paid.  PSAMF ¶ 13; DRPSAMF ¶ 13.

After June of 2010, Ms. Hammond said that employees could no longer accrue comp time for hours worked over 40 in a week.  PSAMF ¶ 14; DRPSAMF ¶ 14. However, based on the projects Ms. McGowen was working on, she estimates that she worked an average of 12 hours of overtime per week between June of 2010 and her termination on April 11, 2012, for which she was never compensated.  PSAMF ¶ 14; DRPSAMF ¶ 14.[26]

Ms. McGowen's hourly wage was increased to $14.42 on October 1, 2007. PSAMF ¶ 15; DRPSAMF ¶ 15.  Her hourly wage was increased again to $15.00 on

---

[26]    The Defendants interpose a qualified response, but their additional facts do not render the assertions of paragraph 14 inaccurate or misleading.  *See* DRPSAMF ¶ 14.  The Court deems Plaintiff's paragraph 14 admitted under Local Rule 56(f), (g).

March 1, 2008. PSAMF ¶ 16; DRPSAMF ¶ 16. It was increased again to $17.50 on June 1, 2008. PSAMF ¶ 17; DRPSAMF ¶ 17.

As of June 16, 2008, Ms. McGowen's weekly pay was calculated at a rate of $20.00 per hour for a forty hour work week, which amounted to $800.00, and she was paid no less than that amount regardless of the number of hours she worked in a given week. PSAMF ¶ 18; DRPSAMF ¶ 18.[27] This arrangement continued until May 20, 2009. PSAMF ¶ 19; DRPSAMF ¶ 19. From May 20, 2009 to September 30, 2009, Ms. McGowen's weekly pay was calculated at a rate of $22.12 per hour for a forty hour work week, which amounted to $884.80. PSAMF ¶ 20; DRPSAMF ¶ 20. From September 30, 2009 to the end of her employment, Ms. McGowen's weekly pay was calculated at a rate of $22.78 per hour for a forty hour week, or $911.20 per week. PSAMF ¶ 20; DRPSAMF ¶ 20. She was paid no less than those amounts, respectively, regardless of the number of hours she worked in a given week. PSAMF ¶ 20; DRPSAMF ¶ 20.[28]

---

[27] Ms. McGowen asserts only that her "hourly wage was increased to $20.00 per hour on June 16, 2008." The Defendants interpose a qualified response, which the Court reproduces above. Ms. McGowen admitted in her deposition that she was "always paid for 40 hours one way or the other, whether [she] used earned time or vacation or comp time or whatever." *McGowen Dep.* at 12:24-13:1. If she was "out for a partial day or a day," then she "might use some sort of bank of earned time to make up the difference to equal 40 hours' pay." *Id.* at 13:6-8. Her wage history confirms this; there are numerous weeks in which she apparently worked fewer than 40 hours, but the net pay for the week was calculated at 40 hours. DSMF Attach. 2, at 2-6 (ECF No. 52) (June 28, 2011) (*Wage History*). Omitting the fact that she was always paid for a 40 hour week would render the assertion of paragraph 18 misleading because it would appear that Ms. McGowen was still paid on a strictly hourly basis after June 16, 2008. The Court includes the Defendants' qualification.

[28] Ms. McGowen's paragraph 20 claims only that "[o]n or about May 20, 2009, [Ms.] McGowen's Hourly Wage was increased to $22.78 per hour, and she continued to be paid that hourly wage until the time of her termination." PSAMF ¶ 20 (citing *McGowen Aff.* ¶ 22). The Defendants interpose a qualified response, the substance of which the Court reproduces above. DRPSAMF ¶ 20 (citing *McGowen Dep.* at 12:8-13:7 and *Wage History* at 6-14). Paragraph 22 of Ms. McGowen's affidavit cites the Wage History exhibit in support of its assertion, but the Wage History shows that beginning

Aside from the hourly rate, there was no change in the manner in which Ms. McGowen was compensated by FDDC at any point during her employment, except after she was formally promoted to Business Program Coordinator, she always received pay for forty hours of work regardless of how many hours she worked. PSAMF ¶ 21; DRPSAMF ¶ 21. There was also no change in the way she was instructed to keep track of her time and hours worked. PSAMF ¶ 21; DRPSAMF ¶ 21.[29]

Ms. Hammond instructed all of her employees, both exempt and non-exempt, that they should try not to work more than forty hours in one week. PSAMF ¶ 22;

---

with the check dated May 27, 2009 to September 30, 2009, Ms. McGowen's weekly pay was $884.80. *Wage History* at 6-7. Divided by a 40 hour work week, *id.*, this results in an hourly rate of $22.12, not $22.78, as Ms. McGowen claims. Beginning with the check dated Oct. 7, 2009, her weekly pay rises to $911.20, for an hourly rate of $22.78. Because the evidence cited by Ms. McGowen's affidavit supports the Defendants' qualification, and the Defendants' additional facts are necessary to avoid rendering the statement inaccurate, the Court adopts the Defendants' version.

[29]     Ms. McGowen's paragraph 21 claims that

> [a]side from the hourly rate, there was no change in the manner in which [Ms.] McGowen was compensated by FDDC at any point during her employment, and the way she was instructed to keep track of her time and hours worked never changed from 2007 to 2008 or at any point thereafter.

PSAMF ¶ 21 (citing *McGowen Aff.* ¶ 23 and *Hammond Dep.* at 101:2-8). Paragraph 23 of Ms. McGowen's Affidavit supplies most of this language, but it states that "[a]side from my hourly rate of pay *and the issue of comp time*, there was no change . . . ." *McGowen Aff.* ¶ 23 (emphasis added). In light of the Defendants' qualifications to Ms. McGowen's paragraphs 18-20, it would be inaccurate and misleading to omit the "change" in the "issue of comp time" from paragraph 21. The fact that Ms. McGowen was always paid for 40 hours of work every week, regardless of the number of hours she actually worked, is a very significant change. The Court adopts part of the Defendants' qualification, DRPSAMF ¶ 21, in light of Ms. McGowen's statement in her affidavit and the supporting record material. *McGowen Aff.* ¶ 23; *Wage History* at 6-14.

Also, the Court finds it difficult to reconcile the second part of Ms. McGowen's paragraph 21—there was no change in the way she was instructed to keep track of her time—with the contents of her paragraph 14 in which she states that Ms. Hammond told the employees that they could no longer accrue comp time for hours worked after 40 hours in a given week. PSAMF ¶ 14.

DRPSAMF ¶ 22. At the same time, Ms. Hammond's minimum expectation "was that everybody would work" a forty-hour week, and "we worked 9:00 to 5:00 with a half hour lunch." PSAMF ¶ 23; DRPSAMF ¶ 23.

Ms. McGowen's experience at FDDC was similar to that of a former FDDC employee named Kathy Welch. PSAMF ¶ 24; DRPSAMF ¶ 24. Ms. Welch testified in a case she brought against FDDC that she held a position similar to Barbara McGowen, except that she was the Housing Program Coordinator, not the Business Program Coordinator. PSAMF ¶ 24; DRPSAMF ¶ 24. According to Ms. Welch's testimony, Barbara McGowen had fewer educational credentials than Ms. Welch, less work-related experience (because Ms. McGowen had been a paralegal and secretary before coming to work for FDDC), and less responsibility in her position than Ms. Welch had in hers. PSAMF ¶ 25; DRPSAMF ¶ 25.[30] Ms. Hammond outlined strict expectations for Kathy Welch, the Housing Program Coordinator whose job at FDDC was similar to Ms. McGowen's, that she was to be in the office from 9:00 AM to 5:00 PM every day, to the point where "even at my lunch break, I was not to leave the building" and "I had to eat lunch at my desk." PSAMF ¶ 26; DRPSAMF ¶ 26.

---

[30]     The Defendants "object" to Plaintiff's paragraphs 24 and 25 on the ground that Ms. Welch's testimony in her own case would be inadmissible against them under Federal Rule of Evidence 404(b). DRPSAMF ¶¶ 24-25 (citing *Hall v. Mid-State Mach. Prods.*, 895 F. Supp. 2d 243, 270-73 (D. Me. Sept. 11, 2012)). Federal Rule of Civil Procedure 56(c)(2) allows a party to "object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." *See Hall*, 895 F. Supp. 2d at 273 (holding that inadmissible evidence "should not be considered at the summary judgment stage"). At this point, it would be premature for the Court to rule that Ms. Welch's testimony would be inadmissible at trial and therefore the Court has included these paragraphs in its recitation of facts.

FDDC had an unpaid personal leave policy that applied equally to all employees, whether exempt or non-exempt. PSAMF ¶ 27; DRPSAMF ¶ 27.[31]  Ms. Hammond also implemented and clearly communicated to all employees a "comp time" policy at FDDC whereby all employees "were encouraged to keep track" of how many hours they worked over forty in one week and then "take time off when they could to compensate for the extra work." PSAMF ¶ 28; DRPSAMF ¶ 28.  Ms. Hammond encouraged Ms. Welch to keep track of time she worked "on weekends and outside of business hours and to accumulate comp time for that" because Ms. Hammond "felt I needed to be paid for and compensated for the work that I was doing." PSAMF ¶ 29; DRPSAMF ¶ 29.  If Ms. Welch had a doctor's appointment that would take her out of the office for two hours, she could request to use two hours of comp time in order to offset those hours so that she "wouldn't lose any time for attending that appointment." PSAMF ¶ 30; DRPSAMF ¶ 30.

On Friday, October 16, 2008, Administrative Assistant Velena Lamson emailed the entire staff, including Ms. McGowen and a part-time bookkeeper named Griffin Hardy, a timesheet with instructions for employees to fill out their time for the week "so hours can be called in Monday morning." PSAMF ¶ 31; DRPSAMF ¶ 31. The Lamson email included instructions for all employees to keep track of comp time, and the attachment had a place for employees to write down "accumulated comp time." PSAMF ¶ 32; DRPSAMF ¶ 32.

---

[31]     The Defendants interpose a qualified response that "Ms. Hammond does not recall anyone ever taking unpaid personal leave." DRPSAMF ¶ 27 (citing *Hammond Dep.* at 92:9-93:22). This statement does not render paragraph 27 inaccurate or misleading. The Court deems the Plaintiff's paragraph 27 admitted under Local Rule 56(f), (g).

In mid-2010, Ms. McGowen was keeping track of "comp time" on her Outlook calendar in order to demonstrate to Ms. Hammond how much overtime she had accrued. PSAMF ¶ 33; DRPSAMF ¶ 33.[32] For the week of May 17, 2010, Ms. McGowen had accrued 188.5 hours of comp time.[33] PSAMF ¶ 34; DRPSAMF ¶ 34. Around this time, Ms. Hammond asked Ms. McGowen to let her know how much comp time Ms. McGowen had accrued. PSAMF ¶ 35; DRPSAMF ¶ 35. In response, on Wednesday, June 23, 2010, Ms. McGowen sent Ms. Hammond an email stating that "[a]s of June 3rd I had 174 hours of comp time," and she apologized for taking so long to get the information to Ms. Hammond. PSAMF ¶ 35; DRPSAMF ¶ 35. Despite having this information, FDDC never compensated Ms. McGowen for accrued comp time. PSAMF ¶ 36; DRPSAMF ¶ 36. Instead, FDDC announced that employees would no longer be able to accrue comp time. PSAMF ¶ 36; DRPSAMF ¶ 36. Ms. McGowen therefore made a notation in her Outlook calendar that read "NO MORE COMP TIME." PSAMF ¶ 36; DRPSAMF ¶ 36. [34]

---

[32] The Defendants interpose a qualified response, suggesting that Ms. McGowen recorded these hours "for her own purposes; she did not submit the Outlook calendar to Ms. Hammond." DRPSAMF ¶ 33 (citing *McGowen Dep.* at 21:25-22:7). Even if that is true, it does not render the assertion of paragraph 33 inaccurate or misleading. The Court deems the Defendants' qualified response admitted under Local Rule 56(f), (g).

[33] The Defendants did not object or qualify their response to this paragraph, but the Court assumes that Ms. McGowen must be referring to accrued comp time "by the week of" May 17, 2010, not "for the week of" May 17, 2010.

[34] In paragraph 37, Ms. McGowen claims that

> [a]fter the comp time policy changed, [Ms. Welch] complained to [Ms.] Hammond that it was not fair because, if she had to work on the weekend, she "'needed to be compensated for that as was general practice.'" In response, Ms. Hammond agreed that "'she would pay me for part of that.'"

PSAMF ¶ 37 (citing *Welch Dep.* at 64:3-16). The Defendants interpose a qualified response, noting that Ms. Welch described events occurring in February of 2010, four months before Ms. McGowen noted "no more comp time" in her Outlook calendar. DRPSAMF ¶ 37 (citing *Welch Dep.* at 63:19-

Ms. Bemis-Goodall understood from her conversations with Ms. Hammond that the policy at FDDC was "you pay people for what they put down on their time sheets," regardless of whether they were salaried or hourly. PSAMF ¶ 38; DRPSAMF ¶ 38.[35] Ms. Hammond went back and forth on her position with regard to the comp time policy at FDDC. PSAMF ¶ 39; DRPSAMF ¶ 39. Ms. Bemis-Goodall spoke with Ms. Hammond on several occasions about the way that comp time was being handled, and how salaried employees were being compensated. PSAMF ¶ 39; DRPSAMF ¶ 39. Ms. Bemis-Goodall told Ms. Hammond that "the way the comp time was being handled with the professional salaried people" was incorrect. PSAMF ¶ 39; DRPSAMF ¶ 39.

Ms. Hammond implemented a clearly communicated policy at FDDC whereby if you were a salaried employee,

> "and you forgot your lunch and you were going to go down and grab something to eat and come back and you were gone for an hour, that

---

64:16 and PSAMF Attach. 11 (ECF No. 58) (undated) (*McGowen Calendar*)). Ms. Welch testified that she, personally, was not permitted to accumulate comp time without Ms. Hammond's pre-approval, *Welch Dep.* at 63:21-23, and that this occurred following a complaint by Ms. Welch about pay disparity with Ms. McGowen. *Id.* at 63:19-23. The pay disparity complaint occurred sometime in October of 2009, *id.* at 44:5-23, and Ms. Welch's complaint about her comp time policy occurred in February of 2010. *Id.* at 63:23-64:16. The record shows that the shift in FDDC's general comp time policy occurred in "about mid-2010." *Interrog. Answers* ¶ 15; *McGowen Calendar* at 1. Even viewing this evidence in a light most favorable to Ms. McGowen, the Court does not conclude that Ms. Welch's February 2010 complaint to Ms. Hammond about her own comp time policy occurred "after the comp time policy changed," or even that the complaint was in any way related to FDDC's general policy on comp time. Therefore, the Court does not credit Ms. McGowen's paragraph 37.

[35] The Defendants interpose a qualified response, claiming that Ms. Bemis-Goodall "is not aware of any salaried employee at FDDC being paid for less than 40 hours of work." DRPSAMF ¶ 38 (citing *Bemis-Goodall Dep.* at 51:15-18). Ms. Bemis-Goodall testified that her understanding from Ms. Hammond was that if a salaried employee worked less than 40 hours in a week, she would have to use accumulated vacation time to reach 40 hours. *Bemis-Goodall Dep.* at 50:25-51:7. If the employee lacked available vacation time, then "if . . . a . . . salaried person put down 39 hours, they were only getting 39 hours of pay." *Id.* at 50:18-20. In this context, Ms. McGowen's paragraph 38 is not an inaccurate or misleading representation of Ms. Bemis-Goodall's understanding of the policy. The Court deems Ms. McGowen's paragraph 38 admitted under Local Rule 56(f), (g).

hour got deducted from your time. And if you didn't want to use your vacation time, then you got paid for 39 hours."

PSAMF ¶ 40; DRPSAMF ¶ 40.[36]

During Ms. McGowen's employment and "even just recently," Ms. Hammond did not realize there was a "real distinction" between salaried and hourly employment, and she did not have a "full understanding of it." PSAMF ¶ 42; DRPSAMF ¶ 42. Until the issue of comp time was brought up, Ms. Hammond did not understand that "regardless of comp time a salaried employee can work 33 and a half hours in a given week and get paid the same amount." PSAMF ¶ 43; DRPSAMF ¶ 43. Since the commencement of this litigation, Ms. Hammond and FDDC's director of operations have been "trying to get a better understanding" of the difference between hourly and salaried employment. PSAMF ¶ 44; DRPSAMF ¶ 44. They have been told: "[Y]ou can even work two hours and be paid for the full day because you're salary." PSAMF ¶ 44; DRPSAMF ¶ 44. Ms. Hammond admits

---

[36] The Defendants interpose a qualified response, but their qualification does not render paragraph 40 inaccurate or misleading. *See* DRPASMF ¶ 40; *supra* note 35. The Court deems Plaintiff's paragraph 40 admitted under Local Rule 56(f), (g).

In paragraph 41, Ms. McGowen asserts that "[b]ecause of this policy, Ms. McGowen seldom worked less than 40 hours for fear of either using up her vacation time or not getting paid." PSAMF ¶ 41 (citing *McGowen Dep.* ¶ 25). The Defendants object to paragraph 41 on the ground that Ms. McGowen's affidavit is not competent summary judgment evidence, because it is not notarized and does not bear the language required by 28 U.S.C. § 1746. For the reasons previously discussed, the Court does not strike paragraph 41 on that basis.

The Defendants also deny paragraph 41. DRPSAMF ¶ 41 (citing *McGowen Dep.* at 19:10-22). At her deposition, Ms. McGowen testified that after the May 2010 change of policy, requiring employees not to work more than 40 hours in a week without permission, she was unable to comply with the new policy because of the volume of her work. *McGowen Dep.* at 16:5-17:1, 18:5-15, 19:10-22. This testimony, like the assertion of paragraph 41, refers to the period after the change in the comp time policy. *See* PSAMF ¶¶ 35-41. However, the deposition testimony contradicts the affidavit as to Ms. McGowen's motive for working 40 hours per week. Ms. McGowen cannot, without adequate explanation, generate a factual dispute by using her affidavit to contradict clear statements to unambiguous questions during her deposition. *Colantuoni*, 44 F.3d at 4-5. In light of this irreconcilable contradiction, the Court does not credit Plaintiff's paragraph 41.

that this was a difficult concept for her to understand, but "that's how it was explained to us, if you're salary you get paid for 40." PSAMF ¶ 44; DRPSAMF ¶ 44.

When the issue of "comp time" was discussed in May of 2010, Mr. Chavonelle told FDDC that they "could not use the word comp time anymore," and they should not use that word because "for salaried positions there is that distinction, you don't use comp time for salaried." PSAMF ¶ 45; DRPSAMF ¶ 45.

On Thursday, July 7, 2011, FDDR Reorganization Manager Eric Buch sent an email to Ms. Hammond with "High" importance, noting that he had discussed some personnel matters needing "urgent" attention. PSAMF ¶ 46; DRPSAMF ¶ 46. At "the top of [the] list" was "the matter of policies and practices related to exempt and non-exempt employees." PSAMF ¶ 46; DRPSAMF ¶ 46. As a result of this email, Ms. Hammond met with Mr. Chavonelle and Mr. Buch on or about Monday, July 18, 2011, and they discussed the FLSA exempt status criteria as well as the Wage and Hour Division's Fact Sheet with regard to the salary basis test. PSAMF ¶ 47; DRPSAMF ¶ 47.

## III. OVERVIEW

### A. Count I: The Fair Labor Standards Act

#### 1. Analytical Framework

The FLSA generally requires that when an employee works more than forty hours in one week, she be paid at a rate of one and one-half of her regular rate. 29 U.S.C. § 207(a)(1); *Hines v. State Room, Inc.*, 665 F.3d 235, 241 (1st Cir. 2011). The salient exception to the rule in Ms. McGowen's case is that any "employee employed in a bona fide executive, administrative, or professional capacity" is exempt from

the overtime pay requirements. 29 U.S.C. § 213(a)(1). An employee must bring suit to recover unpaid overtime under FLSA within two years of the accrual of the cause of action, or within three years if the underpayment is wilful. 29 U.S.C. § 255(a).

The Department of Labor (DOL) has issued regulations that guide courts in determining when an employee is considered exempt:

> (a) The term "employee employed in a bona fide administrative capacity" in section 13(a)(1) of the Act shall mean any employee:
>
> (1) Compensated on a salary or fee basis at a rate of not less than $455 per week (or $380 per week, if employed in American Samoa by employers other than the Federal Government), exclusive of board, lodging or other facilities;
>
> (2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and
>
> (3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

29 C.F.R. § 541.200. Courts have generally referred to the FLSA's exempt status criteria as including a "salary basis" test and a "duties" test.[37] *E.g.*, *Auer v. Robbins*, 519 U.S. 452, 455-56 (1997).

An employee is paid on a "salary basis" if "the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed." 29 C.F.R. § 541.602.

---

[37] There is a third test, the "salary level test." *Baden-Winterwood*, 566 F.3d at 626-27; *Cash v. Cycle Craft Co.*, 508 F.3d 680, 683 (1st Cir. 2007). Ms. McGowen meets the required salary level of "not less than "$455 per week" for an employee employed in a bona fide administrative capacity. 29 C.F.R. § 541.200(1).

There are two prongs to the "duties test." *See id.* § 541.200. First, "[t]he phrase 'directly related to the management or general business operations' refers to the type of work performed by the employee." *Id.* § 541.201(a). These duties encompass "work in functional areas such as tax; finance; accounting; budgeting; . . . and similar activities." *Id.* § 541.201(b). Second, "[t]he phrase 'discretion and independent judgment' must be applied in the light of all the facts involved in the particular employment situation in which the question arises." *Id.* § 541.202(b). An exempt employee's exercise of discretion and independent judgment "involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered." *Id.* § 541.202(a). Thus, it "implies that the employee has authority to make an independent choice, free from immediate direction or supervision." *Id.* § 541.202(c).

"An employer defending a suit under the [FLSA] bears the burden of establishing that a particular employee's job falls within such an exemption." *Cash v. Cycle Craft Co.*, 508 F.3d 680, 683 (1st Cir. 2007). "Exemptions from the duties imposed by the FLSA on employers are to be 'narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within their terms and spirit.'" *McLaughlin v. Boston Harbor Cruise Lines, Inc.*, 419 F.3d 47, 58 (1st Cir. 2005) (Lipez, J., concurring) (quoting *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960)).

### 2. Position of the Parties

#### a. The Defendants

##### i. Salary Basis Test

The Defendants contend that while she was employed at FDDC, Ms. McGowen met the salary basis test for an exempt employee. *Def.'s Mot.* at 11-12. They note that in *Auer*, 519 U.S. at 458-61, the Supreme Court denied exempt status to an employee if the employer had an actual practice of making deductions from the employee's salary or if the employee was covered by a policy that created a "significant likelihood" that such deductions would be made. *Def.'s Mot.* at 11. They further note that after *Auer* was decided, the DOL promulgated new regulations that eliminated the "significant likelihood" portion of the salary basis test. *Id.* (citing *Baden-Winterwood v. Life Time Fitness, Inc.*, 566 F.3d 618, 627-28 (6th Cir. 2009) and 29 C.F.R. § 541.603(b)). They contend that now an employee's salaried status is only lost if the employer has an "actual practice" of making improper deductions from the employee's salary. *Id.* (citing *Baden-Winterwood*, 566 F.3d at 628).

The Defendants conclude that Ms. McGowen meets the salary basis test because "she received a fixed amount of pay on a weekly basis regardless of the hours she worked from at least June 2008 to the end of her employment on April 11, 2011." *Id.* at 12. They argue that FDDC never deducted any money from Ms. McGowen's weekly pay, and even if they "deducted time from an accrued leave bank for days she did not work," such a practice would not, on its own, violate the salary basis test. *Id.*

### ii.    Duties Test

The Defendants also contend that Ms. McGowen meets both prongs of the "duties test" to be an exempt employee. *Def.'s Mot.* at 12-15. They begin with the first prong, arguing that her primary duties as business program manager were similar to those of the examples given in the DOL regulations, 29 C.F.R. § 541.203(b). *Def.'s Mot* at 14. They view her duties as directly related to FDDC's business operations, and those of its clients, because she was intimately involved in the procurement and administration of business loans, and, they argue, she directly worked to maintain and foster relations with FDDC's clients. *Id.*

As to the second prong, they contend that Ms. McGowen had discretion and independent judgment. *Id.* at 14-15. They claim she assisted clients to select FDDC services that met their needs, focusing primarily on her work assisting clients with developing business plans, applying for loans and grants, and "performing trainings." *Id.*

The Defendants conclude that Ms. McGowen was an exempt administrative employee from at least June, 2008 until her termination. Because Ms. McGowen's Complaint was filed on April 2, 2012, they argue that Count I covers the period from April 2009 to her termination in April 2011. They maintain that as Ms. McGowen was an exempt employee during this period, they are entitled to judgment as a matter of law on Count I.

### b.  Barbara McGowen's Response

### i.  Salary Basis Test

Ms. McGowen begins her analysis of this test with the proposition that "the paramount issue is whether 'the facts demonstrate that the employer did not intend to pay employees on a salary basis.'"  *Pl.'s Opp'n* at 20 (quoting 29 C.F.R. § 541.603(a)).  She contends that "there is an obvious intent here to compensate [Ms.] McGowen on an hourly rather than salary basis."  *Id.*

Next, Ms. McGowen disputes that the employee must suffer an actual deduction to fall out of the salary basis test.  *Id.*  She cites the DOL's Final Rule implementing what is now 28 C.F.R. § 541.603(a) as evidence that the DOL intended the regulation to remove employees from exempt status if there is a policy to take deductions but the employee does not suffer "an actual deduction."  *Id.*  She contends, instead, that the "pervasive, 'clearly communicated' compensation policy implemented by FDDC was an 'actual practice' of making improper deductions."  *Id.* at 21.  She also argues that deductions from Ms. McGowen's "bank of comp time" are an "actual practice" of deducting compensation under the regulations.  *Id.*  As a fallback, Ms. McGowen argues that an actual practice of deductions should not be necessary to show a FLSA violation, and that the threat of deductions should an employee work less than 40 hours is sufficient.  *Id.* at 21-22.

Ms. McGowen also argues that because FDDC's leave policies applied equally to exempt and non-exempt employees, Ms. McGowen must not have been compensated on a salary basis.  *Id.* at 22.  Finally, Ms. McGowen attacks what she characterizes as the Defendants' argument that FDDC's comp time policy was a

valid exercise of an employer's ability to provide "'additional compensation without losing the exemption'" under the regulations. *Id.* (quoting 29 C.F.R. § 541.604(a)).

### ii.    Duties Test

Ms. McGowen concedes that her only disagreement with the Defendants on the duties test is over the application of the second prong—whether her job involved "'the exercise of discretion and independent judgment with respect to matters of significance.'" *Pl.'s Opp'n* at 16 (quoting 29 C.F.R. § 541.200(a)(1)). She argues primarily that the discretionary, independent duties of her job were not her primary duties. *Id.* at 16 (citing 29 C.F.R. § 541.700). She also places the burden on the Defendants to prove that the discretionary, independent duties were her primary duties, and contends that their failure to address this issue is "fatal to Defendants' Motion." *Id.*

Ms. McGowen next insists that an employee's exempt or non-exempt status is a highly fact-bound determination, not suitable for determination on this summary judgment record. *Id.* at 17. She suggests that a conclusory, general statement at an employee's deposition about job duties is not sufficient to support summary judgment. *Id.* at 17-18).

Turning to the facts of her case, Ms. McGowen denies that she had the necessary independent decision-making authority to support the second prong of the duties test. *Id.* at 18-19. She suggests that she merely "'screen[ed] applicants to obtain data regarding their minimum qualifications.'" *Id.* at 19 (quoting 29 C.F.R. § 541.203(e)). She denies that she was "allowed to unilaterally 'determine which financial products best met the customers' needs and financial circumstances'—

Susan Hammond made those decision for her." *Id.* (quoting 29 C.F.R. § 541.203(b)). She also denies that her primary job duties involved "assessing client needs, completing 'major assignments,' or 'acting as a conduit' between FDDC and its clients." *Id.* (quoting *Hines v. State Room, Inc.*, 665 F.3d 235, 240 (1st Cir. 2011)). In fact, she denies that she was able to "exercise *any* discretion, in *any* area of her job." *Id.* (emphasis in original).

### 3. The Defendants' Reply

In their reply, the Defendants first address the salary basis test, observing that Ms. McGowen "admits she received her full weekly pay every week she worked from June, 2008, forward." *Def.'s Reply* at 1. They argue that "it does not matter whether this was stated as if paid at an hourly rate." *Id.* (citing 29 C.F.R. § 541.604(b)). They characterize her comp time as "additional compensation." *Id.* (citing 29 C.F.R. § 541.604(a)). They also reinforce their argument that the "theoretical possibility of deductions from an employee's salary, whether clearly communicated through an informal policy or otherwise," does not render an employee non-exempt; it is actual deductions that matter. *Id.* at 1-2.

As for the duties test, the Defendants point out that Ms. McGowen admitted in her deposition that she had "discretion and independent judgment" in her position, and that her affidavit cannot directly contradict that statement. *Id.* at 2. They also noted that the undisputed facts cut in favor of her having that very discretion and judgment. *Id.* Finally, they argue that even if Ms. Hammond had some level of oversight and final say over Ms. McGowen's discretionary decisions, this does not cause Ms. McGowen to fail the duties test. *Id.* at 2-3 (citing 29 C.F.R.

§ 541.202(c) ("Employees can exercise discretion and independent judgment even if their decisions or recommendations are reviewed at a higher level")).

## IV.    DISCUSSION

### A.    Salary Basis Test

An employee only loses salaried status if the employer has an actual practice of making improper deductions. 29 C.F.R. § 541.603(a); *Cash*, 508 F.3d at 683-84. Even a few isolated deductions may be insufficient to establish intent as a matter of law. *Id.* at 684 ("[T]wo aberrant paychecks out of the approximately 50 that Cash received do not amount to an 'actual practice'"). The undisputed facts show that after June 2008, Ms. McGowen was paid for forty hours per week regardless of how many hours she worked, Section II.B.1.b, *supra*; Section II.B.2.a, *supra*; FDDC never actually made an improper deduction from Ms. McGowen's paycheck.

At the same time, the undisputed evidence shows that Ms. McGowen accrued and occasionally consumed hours from a "bank" of "comp time" hours. Section II.B.1.b, *supra*; Section II.B.2.a, *supra*. Ms. McGowen claims that this establishes an "actual practice" of docking pay. *Pl.'s Opp'n* 21. The Court disagrees.

In *McBride v. Peak Wellness Center*, 688 F.3d 698 (10th Cir. 2012), the Tenth Circuit held that an employer did not violate FLSA absent an actual deduction of cash from an employee's salary because of an absence. *Id.* at 704-06. In *McBride*, the employer had a policy of deducting time from the employee's accrued leave when she did not work a full eight-hour day. *Id.* at 704. The Tenth Circuit noted that the rule against deductions does not extend "to non-monetary compensation such as

vacation time or sick leave." *Id.* The *McBride* Court quoted an opinion letter from the DOL:

> In no event can deductions from an exempt employee's salary be made for full or partial day absences occasioned by lack of work . . . . Employers can, however, make deductions for absences from an exempt employee's leave bank in hourly increments, so long as the employee's salary is not reduced. If exempt employees receive their full predetermined salary, deductions from a leave bank, whether in full day increments or not, do not affect their exempt status.

*Id.* (quoting Opinion Letter, FLSA2009-18, at 9 (Dep't of Labor Jan. 16, 2009), *available at* http://www.dol.gov/WHD/opinion/flsa.htm.

As Ms. McGowen has explained it, FDDC's policy regarding overtime is strikingly similar to the "leave bank" that the DOL opinion letter and the *McBride* Court describe. Like vacation or sick leave, FDDC did not pay Ms. McGowen overtime but allowed her to bank the time and to take it off without affecting her salary. Thus, accrued unpaid overtime became another way of fixing the amount of personal time. Moreover, as in *McBride*, if Ms. McGowen had used up all her comp time, her salary would remain unchanged and "no further penalty would be imposed." *Id.* at 705.

Furthermore, although the employee in *McBride* alleged that the employer had subtracted time from her accrued leave because she had left early or arrived late, she did not claim that the employer ever made any deductions to her salary. *Id.* The *McBride* Court noted that under DOL regulations, a plaintiff must show "[a]n actual practice of making improper deductions", *id.* (quoting 29 C.F.R. § 541.603(a)), "rather than the theoretical possibility of such deductions." *Id.* As the

employer had not actually made any deductions from the employee's salary and as the employer's policy did not allow for such deductions under any circumstances, the *McBride* Court concluded that the employer's policy did not violate the FLSA. *Id.* at 706.

Both Ms. McGowen and the Defendants rely on *Baden-Winterwood v. Life Time Fitness, Inc.*, 566 F.3d 618, 627-28 (6th Cir. 2009), and other courts have treated that decision with deference. *E.g.*, *McBride*, 688 F.3d at 705. In *Baden-Winterwood*, the Sixth Circuit distinguished the legal standard applied before and after August 23, 2004, when new DOL regulations become effective. *Id.* at 628 (citing 29 C.F.R. § 541.603(a)). The Sixth Circuit noted that the older *Auer* standard—evaluating whether the employer's plan created a significant likelihood of improper deductions—was no longer applicable under the new regulations. *Id.* at 632. The new DOL regulation states:

> An employee will be considered to be paid on a "salary basis" within the meaning of these regulations if the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed.

29 C.R.F. § 541.602(a). As the Sixth Circuit explained, "[u]nder both versions, [the employer] bears the burden of proving that [the employee was] paid: (1) a predetermined amount, which (2) was not subject to reduction (3) based on quality or quantity of work performed. Notably, however, rather than include the term

'employment agreement,' the updated regulations focus on pay received." *Id.* at 627.[38]

In *Cash*, the First Circuit considered an employee who earned approximately fifty steady paychecks at his salary amount, but two paychecks were for a lesser amount. 508 F.3d 680, 682.[39] The *Cash* Court held that "two aberrant paychecks out of the approximately 50 that Cash received do not amount to an 'actual practice.'" *Id.* at 684.

If two improper deductions are not an "actual practice" in this Circuit, zero deductions do not meet the standard either. Both *McBride* and *Baden-Winterwood* support the same conclusion; those Courts only found liability where there had been an actual deduction of pay from paychecks, and the *McBride* Court explicitly refused to find an "actual practice" when the employer deducted from accrued leave time. 688 F.3d at 704-06.

At oral argument, Ms. McGowen vigorously pressed her contention that the DOL's Final Rule implementing 29 C.F.R. § 541.603(a) showed that the DOL had made a policy choice to take employees out of the salary basis test if the employer has an intent to make deductions, but never actually does so, because the employees never work below 40 hours in a week. In her briefing, Ms. McGowen quoted the Final Rule with several omitted sentences:

---

[38] The *Baden-Winterwood* Court held that the employer violated the FLSA for pay periods after the new regulations took effect but only as to actual deductions that it took from its employees' salary under its plan. 566 F.3d at 632-34. In fact, the Court limited the plaintiffs' recovery only to those pay periods in which the employer actually took improper deductions. *Id.* at 633-34 (citing 29 U.S.C. § 541.603(b)).

[39] The facts in *Cash* do not establish whether these lower earnings were mistakes or the result of a company policy. *Cash*, 508 F.3d at 682.

> We are concerned with those employees who actually suffer harm as a
> result of salary basis violations and want to ensure that those
> employees receive sufficient back pay awards and other appropriate
> relief. We disagree, however, with those comments arguing that only
> employees who suffered an actual deduction should lose their exempt
> status. . . . An exempt employee in the same job classification working
> for the same manager responsible for making improper deductions, for
> example, may choose not to leave work early for a parent-teacher
> conference for fear that her pay will be reduced, and thus is also
> suffering harm as a result of the manager's improper practices. . . . The
> Department's construction best furthers the purposes of the section
> 13(a)(1) exemptions because it realistically assesses whether an
> employer intends to pay employees on a salary basis. For the same
> reasons, final subsection (a) provides that "whether the employer has a
> clearly communicated policy permitting or prohibiting improper
> deductions" is one fact to consider when determining whether the
> employer has an actual practice of not paying employees on a salary
> basis.

*Pl.'s Opp'n* at 20-21 (quoting 69 Fed. Reg. 22122-01, at *22180 (Apr. 23, 2004)). Ms.

McGowen concludes that this statement "expressly contemplates the situation faced

by Plaintiff." *Id.* at 20.

When read with the omitted sentences restored, however, the Final Rule

demonstrates why Ms. McGowen's interpretation of DOL's policy is incorrect:

> We are concerned with those employees who actually suffer harm as a
> result of salary basis violations and want to ensure that those
> employees receive sufficient back pay awards and other appropriate
> relief. We disagree, however, with those comments arguing that only
> employees who suffered an actual deduction should lose their exempt
> status. *An exempt employee who has not suffered an actual deduction
> nonetheless may be harmed by an employer docking the pay of a
> similarly situated co-worker.* An exempt employee in the same job
> classification working for the same manager responsible for making
> improper deductions, for example, may choose not to leave work early
> for a parent-teacher conference for fear that her pay will be reduced,
> and thus is also suffering harm as a result of the manager's improper
> practices. *Because exempt employees in the same job classification
> working for the same managers responsible for the actual improper
> deductions may reasonably believe that their salary will also be docked,
> such employees have also suffered harm and therefore should also lose*

*their exempt status.* The Department's construction best furthers the purposes of the section 13(a)(1) exemptions because it realistically assesses whether an employer intends to pay employees on a salary basis. For the same reasons, final subsection (a) provides that "whether the employer has a clearly communicated policy permitting or prohibiting improper deductions" is one factor to consider when determining whether the employer has an actual practice of not paying employees on a salary basis.

69 Fed. Reg. 22122-01, at *22180.

The Final Rule shows that the DOL is concerned with situations where an employer actually deducts the salaries of some employees pursuant to a policy, and other co-workers then do not work fewer hours for fear of losing money. But the concern is expressly cabined to those situations where the employer has actually taken an improper deduction—not here, where there is no evidence that FDDC ever deducted any employee's salary. The DOL's concern is consistent with the shift away from the "substantial likelihood" test from *Auer*; the point of the discussion in the Final Rule is to illustrate that once an employer makes a deduction for one employee, all similarly situated employees will fall out of the salary basis test. Nothing in the Final Rule calls into question the holdings from *McBride*, *Baden-Winterwood*, and *Cash*—that absent the employer's deduction of money from a paycheck, the employees remain within the salary basis test.

At oral argument, Ms. McGowen also strenuously pressed her view that the Court must focus on the intent of the parties in determining whether an employer has violated the FLSA. The Court disagrees. As the Sixth Circuit explained in *Baden-Winterwood*, under the prior DOL regulation as interpreted by the Supreme Court in *Auer*, "an employee is not paid on a salary basis if (1) there is an actual

39

practice of salary deductions or if (2) an employee is compensated under a policy that clearly communicates a significant likelihood of deductions." 566 F.3d at 627. To accept Ms. McGowen's argument would contravene the DOL's 2004 move away from employer policy to actual practice, and would require the Court to re-enter the discarded and murky world of employer intent and policy.

Ms. McGowen's alternate arguments are equally unavailing. The fact that FDDC's leave policies applied equally to exempt and non-exempt employees does not collapse the distinction between them, as she suggests. *Pl.'s Opp'n* at 22. Furthermore, it is unnecessary to address whether the comp time was "additional compensation" given by the employer under 29 C.F.R. § 541.604(a), given the Court's conclusion that the comp time policy itself did not cause Ms. McGowen to fall out of the salary basis test.

The Court concludes that Ms. McGowen meets the salary basis test for an exempt employee under 29 C.F.R. § 541.200(a)(1).

### B. Duties Test

Ms. McGowen concedes that her primary duty was "the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers." 29 U.S.C. § 541.200(a)(2).[40] The question is whether the summary judgment record shows that her primary job duty included "the exercise of discretion and independent judgment

---

[40] "[T]he parties dispute the applicability of only the third element [of § 541.200(a)], which is whether [Ms.] McGowen's primary job duties involved 'the exercise of discretion and independent judgment with respect to matters of significance.'" *Pl.'s Opp'n* at 16 (quoting 29 U.S.C. § 541.200(a)(3)).

with respect to matters of significance." *Id.* at § 541.200(a)(3). As a preliminary matter, the Court rejects Ms. McGowen's contention that the Defendants' "fail[ure] [to] articulate the frequency with which [Ms.] McGowen performed each of the job duties it cites" is "fatal to the Defendants' Motion." *Pl.'s Opp'n* at 17. The Court is able to make this determination based on the summary judgment record.

"Whether or not a position is exempt from the overtime requirement is a mixed question of law and fact." *Bolduc v. Nat'l Semiconductor Corp.*, 35 F. Supp. 2d 106, 114 (D. Me. 1998). If there is a genuine dispute of fact that goes to the nature of the job duties, then it is "for a fact-finder and not the Court to determine how the Plaintiff actually spent her work day." *Nicholson v. Bangor Historic Track, Inc.*, No. 2:11-cv-00347-NT, 2013 WL 685337 (D. Me. Feb. 25, 2013) (unreported). However, if the summary judgment record is devoid of such disputes, the Court may decide the issue as a matter of law. *See Bolduc*, 35 F. Supp. 2d at 114.

In *Bolduc*, the defendant argued that the plaintiff employee, an engineer, fell into the "learned professional" exemption under FLSA. *Id.* at 115; 29 C.F.R. § 541.300. Like the administrative exemption, the professional exemption requires that the employee exercise discretion and judgment. 29 C.F.R. § 541.301(b). The Court concluded, however, that the summary judgment record supporting the plaintiff's classification as a professional was insufficient to support judgment as a matter law. 35 F. Supp. 2d at 114-15. The evidence supported a "general proposition" that the plaintiff "supervised the projects assigned to him . . . and had authority to purchase materials and set a budget for the projects he managed." *Id.*

at 115.  He also "recommended subcontractors" and "chose project vendors."  *Id.*

However, the Court found that the evidence "lacks the specificity that would compel

a finding that [the plaintiff] used discretion in his day-to-day activities" as a

manager.  *Id.*  It found the statements by the plaintiff in his deposition "conclusory

and general" and did not "describe [his] specific job duties so that a judgment may

be made whether he was exempt [from the FLSA]."  *Id.*  Because the record

"lack[ed] specific facts about [the plaintiff's] day-to-day duties," his exempt or non-

exempt status remained a genuine issue of material fact.

In *Nicholson*, the defendants argued that the plaintiff fell into the "executive

employee" exemption.  *Nicholson*, 2013 WL 685337, at *6-7; 29 C.F.R. § 541.100.

This exemption requires, among other things that it only apply to an employee

> (2) Whose primary duty is management of the enterprise in which the
> employee is employed or of a customarily recognized department or
> subdivision thereof; [and]
>
> . . .
>
> (4) Who has the authority to hire or fire other employees or whose
> suggestions and recommendations as to the hiring, firing,
> advancement, promotion or any other change of status of other
> employees are given particular weight.

29 C.F.R. § 541.100(a).  The *Nicholson* Court found genuine disputes of fact on both

of these elements because "neither of the parties has provided a definitive enough

account of the Plaintiff's job for the Court to conclude as a matter of law that the

Plaintiff either meets or does not meet" the definition.  *Nicholson*, 2013 WL 685337,

at *7.  The Court recited a number of outstanding factual disputes going directly to

these elements; for instance, her salary was only slightly higher than non-

managers, she lacked authority in many areas of the business she was allegedly "managing," she was required to report to her supervisor on a daily basis, there was a genuine dispute as to whether she was the most senior staff member in her facility, and another dispute as to whether she had the authority to hire, fire, and discipline employees. *Id.* at *7-8. In the face of these factual disputes, going directly to two of the elements of the executive employee exemption, the Court refused to grant judgment as a matter of law. *Id.* at *8. It was in this context that the Court wrote that "[i]t is for a fact-finder and not the Court to determine how the Plaintiff actually spent her work day." *Id.*

This summary judgment record is both sufficiently specific and sufficiently undisputed to support judgment as a matter of law on the duties test for the administrative exemption. Unlike in *Bolduc*, there is ample specific evidence of Ms. McGowen's day to day tasks. Section II.B.1.b, *supra*. It is undisputed—as Ms. McGowen acknowledged in her deposition—that the highly detailed FDDC job description of the Business Program Coordinator position was an accurate summary of Ms. McGowen's job duties. *Id.* The parties also agree that Ms. McGowen exercised discretion and independent judgment in her job. *Id.* Indeed, both the job description and other undisputed facts reveal discretion. *Id.* That her discretion was subject to Ms. Hammond's supervisory review does not make it less discretionary for the purposes of the duties test. 29 C.F.R. § 541.202(c); *see also Hines*, 665 F.3d at 246 ("The fact that, after engaging a potential client and arriving at a proposed agreement for [an event], the [employees] submitted the proposal to

management for approval does not, therefore, detract from the judgment that was exercised in arriving at the proposal in the first instance").

Furthermore, unlike the record in *Bolduc*, here the record contains specific examples of Ms. McGowen's day to day tasks. For instance, Ms. McGowen:

- prepared loans and information on loans for FDDC's housing committee;

- worked one-on-one with FDDC clients and assisting them in utilizing the various services provided by FDDC;

- worked with tribal communities to organize necessary training in order to qualify for grants; and

- assisted outside consultants in preparing grant applications for FDDC clients, including, at times, acting as a writer.

Section II.B.1.b, *supra*. The Business Program Manager job description—which Ms. McGowen acknowledged is an accurate summary of her day to day tasks—also includes examples of work that includes a high level of discretion and judgment.[41] To recite just a few examples, Ms. McGowen:

- "[p]rovided outreach into the five Maine Native communities, identifying and developing new markets and expanding lending opportunities in accordance with the organization's strategic plan";

- "[e]nsured that the Business Program continue[d] to meet the needs of Tribal business owners by maintaining close contact and providing ongoing support";

---

[41] *See also supra* note 10 (discussing Ms. McGowen's admission regarding the job description and her later effort to generate a factual dispute with her affidavit).

- [m]arketed business products, schedule[d] appointments and m[e]t with prospective borrowers to assist with completion of business loan application[s]"; and

- "[m]aintain[ed] rigorous risk management of business loan portfolio to assure repayment of all business loans."

DSMF Attach. 9 *Four Directions Development Corporation Job Description* (ECF No. 52) (Mar. 2007). The list goes on.

This is not a case, as in *Nicholson*, where there are outstanding disputed facts that would preclude summary judgment. This Court has recited in detail the established summary judgment facts in this case, *supra*, and none of them calls into question whether Ms. McGowen exercised discretion and independent judgment in her primary job duty as Business Program Manager. Ms. McGowen was not merely in the business of selling financial products, 29 C.F.R. § 541.203(b), nor did she "merely screen applicants to obtain data regarding their minimum qualifications." *Id.* at § 541.203(e). Indeed, Ms. McGowen's admitted job duties track closely the job duties that § 541.203(b) gives as exemplars of a financial services employee within the administrative exception. *See id.* at § 541.203(b).[42] That Ms. McGowen

---

[42] Title 29 C.F.R. § 541.203(b) states in full:

Employees in the financial services industry generally meet the duties requirements for the administrative exemption if their duties include work such as collecting and analyzing information regarding the customer's income, assets, investments or debts; determining which financial products best meet the customer's needs and financial circumstances; advising the customer regarding the advantages and disadvantages of different financial products; and marketing, servicing or promoting the employer's financial products. However, an employee whose primary duty is selling financial products does not qualify for the administrative exemption.

"operated within a strict set of rules," *Pl.'s Opp'n* at 19, does not set her apart from any other employee in any other job, many of whom exercise discretion and judgment under a strict set of rules.

### C.    Conclusion

The Court concludes that there are no genuine disputes of material fact as to Count I, and the Defendants are entitled to judgment as a matter of law.  During the time period in question—June 2008 to April 11, 2011—this summary judgment record shows that Ms. McGowen was an exempt administrative employee under FLSA.  She meets both the salary basis test and the duties test under the DOL regulations and related case law.  The Court grants the Motion as to Count I.

## V.    REMAINING STATE LAW CLAIMS

Count I was the only count in the Amended Complaint that stated a claim under federal law; the Court had supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(a).  With Count I eliminated on summary judgment, all remaining claims are purely matters of state law.  The Court dismisses Counts II through V without prejudice to be litigated in the state courts.  28 U.S.C. § 1367(c)(3).[43]

---

[43]      Dismissal of these claims from federal court should not prejudice Ms. McGowen in state court.  For most civil matters, Maine has a six year statute of limitations.  ME. REV. STAT. tit. 14, § 752.  For the claims of defamation stated in Count IV, however, Maine imposes a two-year limitations period.  *Id.* § 753.  Elements of Ms. McGowen's cause of action for slander and libel accrued in March and April of 2011, and so would be time barred if brought now.  However, the federal supplemental jurisdiction statute also tolls the state statute of limitations while supplemental state law claims are pending in federal court and for thirty days after their discretionary dismissal.  28 U.S.C. § 1367(d); *see also Napier v. State*, No. CV-00-042, 2002 WL 32068249, at *3-5 (Me. Super. Nov. 18, 2002) (unreported).

## VI.  CONCLUSION

The Court GRANTS the Motion for Summary Judgment (ECF No. 51) as to Count I and DISMISSES WITHOUT PREJUDICE Counts II through V.  The Court OVERRULES the Plaintiff's Objection to Additional Attachments, Supplemental Citation (ECF No. 70)

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 10th day of March, 2014